```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

     -against-                          ORDER
                                        No. 04-CR-0939 (JS)
EDWIN HENRIQUEZ,

          Defendant.

----------------------------------X

APPEARANCES

For Defendant:       Edwin Henriquez, Pro Se
                     Reg. No. 68916-053
                     FCI Allenwood Low
                     Federal Correctional Institution
                     P.O. Box 1000
                     White Deer, Pennsylvania  17887[1]

For United States:   Megan E. Farrell, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, New York  11722
```

SEYBERT, District Judge:

Currently before the Court is the pro se motion of Defendant Edwin Henriquez ("Defendant") seeking compassionate release in the form of a sentence reduction (hereafter, the "Motion"). (See Motion, ECF No. 512.) The Government opposes the

---

[1] Defendant's most recent address of incarceration was verified by using the Bureau of Prisons ("BOP") Inmate Locator, available at https://www.bop.gov/inmateloc/. (See also infra at 3.) The Clerk of Court is directed to update Defendant's current address of record accordingly.

Motion. (See Opp'n, ECF No. 513.) For the following reasons, the Motion is **DENIED**.

RELEVANT BACKGROUND

I. Defendant's Underlying Conviction

The Court assumes the parties' familiarity with Defendant's conviction. By way of general background: Defendant is an MS-13 gang member (hereafter, the "Gang"), who executed a female Gang member, Olivia Melendez Mendoza ("Olivia Mendoza"), whom he believed was providing Gang-related information to law enforcement officials, shooting her once in the head. After his arrest, Defendant subsequently pled guilty to causing the death of another through the use of a firearm, a violation of 18 U.S.C. § 924(j)(1). (See Plea Agmt., Ex. 1, ECF No. 513-1, attached to Opp'n.) More specifically, in entering his guilty plea, Defendant allocated, inter alia:

> On that day, September 19, 2004, I already was, I was a gang member. MS-13 is and was a street gang that was involved in illegal activities, including homicides and drug sales, which breaks the law of New York State and the Federal laws. I understand that MS has an affect over interstate commerce and foreign commerce.
> The night of September 19, 2004, in Long Island, I shot a firearm against Olivia Mendoza with intention of killing her and I caused her death when I shot her. I planned her death. I planned her death before killing her. I carried out the murder of Olivia Mendoza knowingly, intentionally, voluntarily, deliberately and maliciously. I carried out the murder in order to maintain

> and to gain rank within MS. At the time of doing that, I knew and I understood what I was doing. At the moment of doing that, I knew that what I was doing was wrong and that it was against the law.

(Plea Hr'g Tr., Ex. 2, ECF No. 513-2, at 17, attached to Opp'n.) In his Plea Agreement with the Government, Defendant agreed to a 420-month imprisonment sentence. (See Plea Agmt. ¶ 3; see also Opp'n at 7 ("Probation noted that 'Defense counsel advised that the [D]efendant agreed to the 420-month figure to avoid being subject to the death penalty.'" (citing Presentence Report ¶ 2)).) On June 27, 2011, the Court sentenced Defendant principally to 420 months' imprisonment for the murder of Olivia Mendoza. (See Judgment, ECF No. 466.)

Defendant is currently serving his sentence at the low security Federal Correctional Institute in White Deer, Pennsylvania; he has an anticipated release date of January 17, 2035. See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Edwin Henriquez (BOP Reg. No. 68916-053), https://www.bop.gov/inmateloc/ (last visited Oct. 3, 2024) (identifying Defendant's location as "Allenwood Low FCI").

## II. Relevant Procedural History

On January 22, 2021, Defendant moved for compassionate release. (See Motion.) The Government opposed Defendant's Motion. (See Opp'n.) Defendant was directed not to file a reply. (See Jan. 25, 2021 Elec. Order.) The Motion is ripe for decision.

DISCUSSION

I.  Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)). The First Step Act, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020). "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)). "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for

compassionate release]." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)).  And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72-73).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the First Step Act, courts are not restricted to the Sentencing Commission's applicable policy statements, but may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); see also Keitt, 21 F.4th at 71 ("A court deciding a compassionate release motion can consider 'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].'" (alteration in original) (quoting Brooker, 976 F.3d at 237)). Indeed, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also Ambrosio, 541 F. Supp. 3d at 254 (same).  "Additionally, district courts may consider

'intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act.'" United States v. Monteleone, No. 92-CR-0351, 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022)).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same). "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

II. Application

A. Exhaustion

Defendant contends he requested compassionate release from the warden. (See Motion at 6-7.) He does not indicate whether or not he received a response from the warden within the requisite 30-day time period. (See id.) Despite the lack of any evidence to establish proper exhaustion, because the Government did not raise an exhaustion defense, and "directs its opposition entirely at the other two prerequisites for compassionate release," the Court proceeds to consider the merits of Defendant's Motion. United States v. Romano, 707 F. Supp. 3d 233, 237 (E.D.N.Y. 2023); see also United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021); United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, *3 (E.D.N.Y. May 23, 2024) ("[B]ecause the Government has not raised an exhaustion defense, the Court finds that it has forfeited any such defense and the Court is 'free to consider the merits' of [defendant's compassionate release] motion" (quoting Saladino; collecting cases)).

B. Defendant has Failed to Establish the Existence of Extraordinary and Compelling Circumstances

Defendant asks the Court to consider: (1) the threat the COVID-19 Pandemic poses to his health (see Motion at 1); (2) the "harsher and more punitive" nature of his incarceration due to the Pandemic (see id. at 2, 7-8); and (3) that his sentence should be

reduced as a result of the Supreme Court's decision in United States v. Davis, 588 U.S. 445, 139 S. Ct. 2319 (2019) (see id. at 8-12). In opposition, the Government argues: (a) pursuant to his medical records, Defendant "does not have any medical conditions that put him at a high-risk for complications related to COVID-19" (Opp'n at 8); (b) while incarcerated, Defendant has had several disciplinary incidents (see id. at 8-9); and (c) the facility where Defendant was housed when he moved for compassionate release took "the threat of COVID-19 seriously and adopted stringent measure to protect inmates and staff." (id. at 9; see also id. at 10). As for Defendant's Davis argument, the Government states that is before the Court via Defendant's Davis-based All Writs Motion. (See id. at 1.) In sum, the Government contends Defendant "has failed to identify a single 'extraordinary and compelling' reason that warrants immediate release." (Id. at 13.) The Court agrees.

As to COVID-19 Concerns: As the Government aptly argues, regarding concerns premised upon COVID-19, "[D]efendant has articulated no basis on which to distinguish himself from the general prison population." (Opp'n at 13.) Indeed, since the beginning of the Pandemic, courts have denied motions for compassionate release where defendants have sought relief based upon generalized fears of COVID-19. See, e.g., United States v. Dekattu, No. 18-CR-0474, WL 7711842, *2 (E.D.N.Y. Dec. 29, 2020) (denying motion for compassionate release where defendant did not

present extraordinary and compelling reasons unique to himself to merit release during COVID-19 outbreak at BOP facility) (collecting cases); United States v. Gioeli, No. 08-CR-0240, 2020 WL 2572191, at *4 (E.D.N.Y. May 21, 2020) ("I cannot find that the danger defendant faces from the mere threat of exposure to COVID-19 constitutes an extraordinary and compelling reason for granting compassionate release."); United States v. Davis, No. 14-CR-0296, 2020 WL 5628041, at *3 (S.D.N.Y. Sept. 21, 2020) (observing "mere existence of COVID-19 either in a prison facility or in society generally is not enough to satisfy the 'extraordinary and compelling reasons' requirement of 18 U.S.C. § 3582(c)(1)(A)") (collecting cases).

Post-COVID, it is well-established that "generalized fear of contracting COVID-19 is insufficient to meet the demanding standard of 'extraordinary and compelling' reasons in light of stabilized conditions at" BOP facilities. United States v. Gonzales, No. 15-CR-6085, 2023 WL 6386139, at *3 (W.D.N.Y. Oct. 2, 2023) (collecting cases). In that vein, as this Court recently stated: "[I]n considering the COVID-19 situation at [a federal correctional facility], one must recognize that the COVID-19 Public Health Emergency ended on May 11, 2023." United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *5 (E.D.N.Y. May 31, 2024) (citing U.S. Dep't Health & Human Servs., Fact Sheet: End of the COVID-19 Public Health Emergency, available at

https://hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html). "Therefore, it is no longer necessary for the BOP to engage in across-the-board special operations."[2] Id. At bottom, more than "three years into the pandemic, 'the Court finds that the risks that were heightened at the onset of the pandemic have largely been reduced or been under control . . . .'" Gonzales, 2023 WL 6386139, at *3 (quoting United States v. Malloy, No. 07-CR-0898, 2023 WL 2237504, at *4 (S.D.N.Y. Feb. 27, 2023)). Therefore, "there is no current issue making compassionate release appropriate here." Id. (citation omitted); see also United States v. Martinez, No. 03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) ("[G]eneralized COVID-19 concerns are not regarded as extraordinary and compelling reasons for compassionate release." (citations omitted)).

To the extent Defendant argues his incarceration has been harsher than intended as a result of conditions imposed to address COVID-19 concerns, "[u]ndoubtedly, 'a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond

---

[2] In Wagner, the Court presumed the BOP had returned to operating its federal correctional facilities "without COVID-19-related precautions", which rendered the inmate-defendant's COVID-19-related argument "of little weight." Wagner, 2024 WL 2801981, at *5 (citing Jones, 17 F.4th at 375 (confinement in facility "where [COVID-19] counts are currently low" was not "extraordinary and compelling" circumstance)).

that imposed by an ordinary day in prison.'" United States v. Johnson, 671 F. Supp. 3d 265, 281 (E.D.N.Y. 2023) (quoting United States v. Mcrae, No. 17-CR-0643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)). Consequently, "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic," courts have been willing to conclude that "pandemic-induced conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release." Id. (quoting United States v. Oquendo, No. 13-CR-0357, 2023 WL 199609, at *5 (S.D.N.Y. Jan. 17, 2023), and collecting cases) (emphasis added); see also United States v. Russo, 643 F. Supp. 3d 325, 333 (E.D.N.Y. 2022) ("In addition to the health risks posed by the pandemic, the restrictions at [federal correctional facilities] during the pandemic have made [defendants'] incarceration[s] much more punitive than originally contemplated at the time of sentencing[s]." (citing United States v. Rodriquez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).

Yet, Defendant's claims that the Pandemic has made his incarceration more punitive than anticipated are unavailing since "these hardships do not set [him] apart from the rest of the BOP inmate population and therefore do not, alone, constitute extraordinary and compelling reasons for his release.'" United States v. Johnson, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021)); see also, e.g., United States v. Veliu, No.

17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) ("[T]he conditions of confinement during the pandemic [do not] give rise to extraordinary and compelling circumstances. Although the Court acknowledges that 'the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure.  While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling.'") (quoting United States v. Johnson, No. 18-CR-0907, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021)); United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard to see how" the BOP's implementation of various protocols in attempting to contain the spread of COVID-19 "ma[d]e the situations of [defendants] 'extraordinary' in terms of the statutory requirement, for in these respects [the defendants] are no different from a host of other prisoners").  Standing alone, the harshness of conditions Defendant faced during the Pandemic were the same as those endured by his fellow inmates; in that sense, they were not extraordinary. See, e.g., Martinez, 2022 WL 3019833, at *3.  Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should weigh in favor of finding an extraordinary and compelling reason for granting compassionate release.  Compare United States v. Amerson, No. 05-CR-0301, 2023 WL 4497767, at *6 (E.D.N.Y. July 12, 2023) (finding where, among other considered circumstances,

defendant had served more than 18 years of a 32-year sentence, and suffered serious health conditions, including type II diabetes which was worsening and proving difficult for defendant to manage with necessary self-care, "the harshness of COVID-related restrictions weigh[ed] in favor of a sentence reduction even if they d[id] not independently constitute an extraordinary and compelling reason to grant compassionate release" (emphasis added)).

As to Defendant's *Davis*-Based Argument: The Court concurs with the Government's position "that [D]efendant's Davis claims are not an extraordinary and compelling reason" warranting granting compassionate release. (Opp'n 14.) As the Government correctly states:

> These claims are properly the subject of a petition pursuant to Title 28, United States Code, Section 2255, which—notwithstanding the [Defendant's Plea Agreement-based collateral challenge] waiver—the [D]efendant has already filed by the Davis Petition.[3] Here, much like the [D]efendant's COVID-19 argument, the [D]efendant has not identified an issue that is particular to him. Indeed, he cannot distinguish himself from the countless federal inmates who, like him, pled guilty to a crime that referenced Title 18, United States Code, Section 924(c)(3) prior to 2019, and thus may

---

[3] Although styled a "Motion to Reduce Sentence Under 28 U.S.C. § 1651(a)—All Writs Act" (see ECF No. 503), a fair reading of same comports with the Government's contention that said motion is more properly construed as a habeas petition pursuant to 28 U.S.C. § 2255 (hereafter, the "Davis All Writs Motion"). (See also ECF No. 508 (Government's Davis All Writs Motion Opp'n), and ECF No. 511 (Defendant's Reply).)

Page 13 of 18

>potentially have a basis to seek modification of their sentence after the Supreme Court's decision in Davis.

(Opp'n at 14.) Therefore, Defendant's Davis-based argument, which is pending before the Court via his Davis All Writs Motion,[4] does not present an extraordinary circumstance warranting compassionate release.

### C. The Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" Jones, 2023 WL 8613867, at *2; see also Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to

---

[4] The Court shall issue a separate ruling on Defendant's Davis All Writs Motion.

> provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(1)-(2).

Johnson, 671 F. Supp. at 283.

Defendant contends he "is no longer the same young man that made a bad decision and committed a serious crime, but is now a mature man who is very remorseful for his past deeds." (Motion at 13.) He also contends "his efforts at rehabilitation bode well for him" notwithstanding acknowledging two serious disciplinary incidents while being incarcerated. (Id.) Even considered as part of the Section 3553(a) Factors calculus, that is simply not enough. As this Court recently stated in rejecting a rehabilitation argument:

> Other than generally claimed rehabilitation, which is not sufficient to support a sentence reduction, Defendant has not proffered anything to persuade the Court that a different outcome is required now. Cf., e.g., Vasquez, 2024 WL 2385264, at *5 (E.D.N.Y., 2024) ("What constitutes rehabilitation is left to the Court's discretion, but courts in this district have considered the following factors: the defendant's 'maintenance of familial and societal relationships; letters of support both from community members and prison staff; conduct and disciplinary records while incarcerated; . . . any achievements and education obtained while incarcerated; . . . gains in maturity[;] and <u>other clear signs that a defendant's incarceration has had rehabilitative value</u>'." (quoting United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added).

United States v. Yong, No. 95-CR-0825, 2024 WL 3648259, at *9 (E.D.N.Y. Aug. 5, 2024); see also Brooker, 976 F.3d at 237-38 (stating "rehabilitation alone shall not be considered an extraordinary and compelling reason" (citing 28 U.S.C. § 944(t)); Wagner, 2024 WL 2801981, at *7 (same (quoting Brooker)).

Moreover, Defendant's claim of rehabilitation rings hollow. While incarcerated at the Nassau County Correctional Facility, Defendant was convicted of possessing a shank. (See Opp'n at 15 (citing PSR ¶ 41).) The Government also asserts Defendant "has continued to maintain[] his contacts with fellow MS-13 members while in federal custody, and he has repeatedly obtained contraband cellular phones, in clear violation of prison rules." (Id.; see also id. at 8 (citing Def.'s Disciplinary Log, Ex. 4, ECF No. 513-4, attached to Opp'n).)

But, it is the nature and circumstances of Defendant's offense that is most troubling. The seriousness of Defendant's offenses cannot be overstated: He committed a premeditated, execution-style murder of Olivia Mendoza, a fellow Gang member, based upon his belief she was sharing information about the Gang with law enforcement officials. As the Government astutely argues: Defendant's "actions are highly indicative of the [his] disregard for humanity and the law." (Opp'n at 16.) In other cases involving violent crimes and other gang members, this Court has stated:

> [G]ranting this Motion, which would effectively reduce [Defendant]'s sentence . . . , would not provide a just punishment for the serious nature of the crime in which [Defendant] participated, i.e., an armed robbery. Relatedly, granting [Defendant]'s Motion upon the reasons he presents would not promote respect for the law. Moreover, both specific and general deterrence weigh against awarding [Defendant] early release. . . . <u>Additionally, gang members need to know their violent, illegal activities are intolerable, and those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences</u>.

<u>United States v. Lake</u>, No. 14-CR-0264, 2023 WL 8810620, at *6 (E.D.N.Y. Dec. 20, 2023) (internal citations omitted; emphases added); <u>see also</u> <u>Wagner</u>, 2024 WL 2801981, at *7-8 (same; quoting <u>Lake</u>). The same holds true—and, more so—here, especially when recognizing the underlying crime was an execution-style murder. Indeed, given the facts of the instant case, Defendant has demonstrated disrespect for the law and, more significantly, disrespect for human life.

Hence, in its discretion, the Court finds, even if Defendant had presented extraordinary and compelling circumstances warranting compassionate release, <u>which he has not</u>, the Section 3553(a) Factors would override those circumstances. The Defendant's agreed-to sentence of 420-month sentence of imprisonment continues to be appropriate to, <u>inter alia</u>: reflect the seriousness of the offense; provide just punishment; promote

respect for the law; adequately deter criminal conduct; and protect the public from the Defendant, thereby satisfying the applicable Section 3553(a) Factors.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Compassionate Release Motion (ECF No. 512) is **DENIED** in its entirety without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at his current address of record (see supra at 1 ("APPEARANCES"), and note 1), including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: October 9, 2024
       Central Islip, New York