```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

     -against-                         ORDER
                                       No. 04-CR-0939 (JS)
EDWIN HENRIQUEZ,

          Defendant.

---------------------------------X

APPEARANCES

For Defendant:     Edwin Henriquez, Pro Se
                   Reg. No. 68916-053
                   FCI Allenwood Low
                   Federal Correctional Institution
                   P.O. Box 1000
                   White Deer, Pennsylvania  17887¹

For United States: Megan E. Farrell, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   610 Federal Plaza
                   Central Islip, New York  11722
```

SEYBERT, District Judge:

Currently before the Court is the pro se motion of Defendant Edwin Henriquez ("Defendant") seeking a modification of his sentence pursuant to the All Writs Act, 28 U.S.C. § 1651 (hereafter, the "Motion"). (See Motion, ECF No. 503; see also Reply, EC No. 511.)  The Government opposes the Motion.  (See

---

[1] Defendant's most recent address of incarceration was verified by using the Bureau of Prisons ("BOP") Inmate Locator, available at https://www.bop.gov/inmateloc/. The Clerk of Court is directed to update Defendant's current address of record accordingly.

Opp'n, ECF No. 508.)  For the following reasons, the Motion is **DENIED**.

RELEVANT BACKGROUND

I. Defendant's Underlying Conviction

The Court assumes the parties' familiarity with Defendant's conviction.  By way of general background: Defendant is an MS-13 gang member (hereafter, the "Gang"), who executed a female Gang member, Olivia Melendez Mendoza ("Olivia Mendoza"), whom he believed was providing Gang-related information to law enforcement officials, shooting her once in the head.  After his arrest, Defendant subsequently pled guilty to causing the death of another through the use of a firearm, a violation of 18 U.S.C. § 924(j)(1).  (See Plea Agmt., Ex. 1, ECF No. 508-1, attached to Opp'n.)  Defendant's plea to the one count, i.e., Count Ten, was predicated upon Counts Seven (the discharge of a firearm during a crime of violence), Four (conspiring to murder Olivia Mendoa), and Five (knowingly and intentionally murdering Olivia Mendoza in violation of N.Y.P.L. § 125.25(1)).  (See Plea Hr'g Tr., ECF No. 508-2, 11:16-12:2 (re: Count Seven), 12:23-13:18 (re: Count Four), and 12;3-9 (re: Count Five), attached to Opp'n; see also Second Superseding Indictment, ECF No. 190 (sealed).)

In entering his guilty plea, Defendant allocated, inter alia:

> On that day, September 19, 2004, I already was, I was a gang member. MS-13 is and was a street gang that was involved in illegal activities, including homicides and drug sales, which breaks the law of New York State and the Federal laws. I understand that MS has an affect over interstate commerce and foreign commerce.
> The night of September 19, 2004, in Long Island, I shot a firearm against Olivia Mendoza with intention of killing her and I caused her death when I shot her. I planned her death. I planned her death before killing her. I carried out the murder of Olivia Mendoza knowingly, intentionally, voluntarily, deliberately and maliciously. I carried out the murder in order to maintain and to gain rank within MS. At the time of doing that, I knew and I understood what I was doing. At the moment of doing that, I knew that what I was doing was wrong and that it was against the law.

(Plea Hr'g Tr. 17.) In his Plea Agreement with the Government, Defendant agrees to a 420-month imprisonment sentence. (See Plea Agmt. ¶ 3; see also Opp'n at 7 ("Probation noted that 'Defense counsel advised that the [D]efendant agreed to the 420-month figure to avoid being subject to the death penalty.'" (citing Presentence Report ¶ 2)).)

Further, another provision of Defendant's Plea Agreement was his agreement to waive his right to "file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. S 2255 <u>or any other provision</u>, the conviction or sentence in the event that the Court imposes a term of imprisonment of 420 months or below" (hereafter, the "Collateral Challenge Waiver"). (Plea Agmt. ¶ 4

(emphasis added).)  At his plea hearing, the Court assured itself that Defendant's Collateral Challenge Waiver was made knowingly and voluntarily.  (See Plea Hr'g Tr. 7:24-8:7, 8:18-23, 9:6-9.) The Court also had the Government reiterate its agreement with Defendant regarding the Collateral Challenge Waiver; in relevant part, the Government stated:

> Paragraph 4 provides that the defendant agrees that he will not file an appeal or otherwise challenge the sentence via 28 U.S.C. Section 2255, or any other provision, if the Court imposes a sentence of 420 months or less.
> Paragraph 4 also provides that the defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that's not already time barred in the event that (A) the defendant's conviction is later vacated for any reason, (B) the defendant violates this agreement, or (C) the defendant's plea is later withdrawn.
> Paragraph 4 also provides that the defendant waives additional discovery.

(Id. at 10:9-22.)  When the Court queried Defendant whether he understood the Government's representation regarding its agreement with him as to the Collateral Challenge Waiver, Defendant stated he did.  (Id. at 10:23-24.)

On June 27, 2011, pursuant to his guilty plea to Count Ten of the Second Superseding Indictment, the Court sentenced Defendant principally to 420 months' imprisonment for the murder of Olivia Mendoza.  (See Judgment, ECF No. 466.)  Defendant is currently serving his sentence at the low security Federal

Correctional Institute in White Deer, Pennsylvania; he has an anticipated release date of January 17, 2035. See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Edwin Henriquez (BOP Reg. No. 68916-053), https://www.bop.gov/inmateloc/ (last visited Oct. 3, 2024) (identifying Defendant's location as "Allenwood Low FCI").

II. Relevant Procedural History

On November 8, 2019,[2] Defendant moved for a sentence modification pursuant to the All Writs Act, 28 U.S.C. § 1651(a), asking the Court "to consider any and all relief relating to an administrative remedy outside his appellate waiver and all relief applicable to him relating to the Davis case and a now invalid statute under [§] 944(c) in 'the interest of justice.'" (Motion at 10); see also United States v. Davis, 588 U.S. 445, 139 S. Ct. 2319 (2019). Apparently recognizing he is stymied by his Collateral Challenge Waiver, Defendant asserts "his claim is outside his appellate waiver restriction in that [his Davis-based arguments] involve[]a major change in a substantive rule by the U.S. Supreme Court." (Motion at 3; see also id. at 3-5 (arguing the retroactivity of Davis).) In opposition, the Government raises two arguments: (1) "[t]he appropriate mechanism for the

---

[2] Defendant's Motion was dated October 5, 2019 (see Motion at 1); however, pursuant to the accompanying Certificate of Service, said Motion was sent to the Court on November 5, 2019 (see Cert. of Serv., ECF No. 503 at 11). It was received by the Court's Pro Se Department on November 8, 2019, and filed that same day (see Motion at 1).

[Defendant]'s challenge to his conviction pursuant to Davis is a petition under 28 U.S.C. § 2255" (Opp'n at 8); and (2) Defendant's "Davis claim is without merit" (id.). For the reasons that follow, the Court agrees with the Government and DENIES the Motion.

DISCUSSION

I. Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

Penn. Bureau of Corr. v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985) (emphasis added). However, there is a statute which specifically addresses the particular issue at hand, i.e., the Section 2255 habeas statue; Section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the

> Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a); see also United States v. Rogers, No. 16-CR-0530, 2024 WL 866172, at *3 (E.D.N.Y. Feb. 28, 2024) ("Section 2255 permits a prisoner in custody to move to vacate, set aside, or correct a federal sentence . . . ." (further quoting Section 2255)).

## II. Application

### A. The All Writs Act is Inapplicable

Defendant recognizes that the All Writs Act "empowers federal courts to fashion extraordinary remedies when the need arises." (Motion at 1 (quoting Penn. Bureau of Corr., 474 U.S. at 43).) It is Defendant's contention that the change in law precipitated by Davis warrants the invocation of this Court's jurisdiction in order to modify his sentence. (See generally Motion at 5.) Not so.

As the Government aptly argues, "Because [Defendant] remains incarcerated on this matter, the appropriate mechanism for the relief requested is a petition pursuant [to Section] 2255, and not a petition under the All Writs Act." (Opp'n at 7.) Indeed, "[a]t bottom, Defendant challenges the imposition of his sentence. And so, [his M]otion is properly construed as a habeas petition

for relief under 28 U.S.C. § 2255." Rogers, 2024 WL 866172, at *2 (collecting cases). Moreover, having considered the arguments raised by Defendant in his Reply, it appears Defendant concedes the proper avenue to challenge his sentence is via a Section 2255 habeas petition. (See, e.g., Reply at 4-5, 12.) However, the Court declines to construe the Motion as a Section 2255 habeas petition in the absence of Defendant having been given the requisite Adams notice. See Rogers, 2024 WL 866172, at *1 ("The Court cannot, however, construe Defendant's motion as a habeas petition without first providing him an Adams warning and affording him the opportunity to withdraw his motion, rather than having it so re-characterized."); see also id. at *4 ("Although Defendant's motion seeks relief properly pursued through a habeas petition, the Court cannot, sua sponte, construe it as a [Section] 2255 petition without Defendant's consent." (citing United States v. Lopez, No. 12-CR-0358, 2020 WL 2063420, at *3 (E.D.N.Y. Apr. 29, 2020) (citing Adams v. United States, 155 F.3d 582, 584 (2d Cir. 1998) (per curiam)))). In any event, even if it were applicable (which, it is not), because Defendant's Davis-based Motion fails to present an extraordinary circumstance warranting the invocation of the All Writs Act, the Court would not rely upon the Act's authority to grant Defendant's Motion. See Penn. Bureau of Corr., 474 U.S. at 43 (concluding, "in the absence of an express finding of exceptional circumstances," the district court did not have

authority under the All Writs Act to issue a writ directing the U.S. Marshals Service to transport state prisoners to a federal courthouse to testify at a trial); cf. generally Chaidez v. United States, 568 U.S. 342, 345 n.1 (2013) (noting coram nobis relief under the All Writs Act "provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241" (emphasis added)).

    B.   The Collateral Challenge Waiver is Enforceable

Even if the Court were to use its authority pursuant to the All Writs Act, consideration of Defendant's Davis-based Motion is forestalled by the Collateral Challenge Waiver he entered into with the Government and which is an enforceable provision of Defendant's Plea Agreement. "A defendant's knowing and voluntary waiver of the right to appeal is enforceable." United States v. Branford, 833 F. App'x 902, 904 (2d Cir. 2020) (citation omitted). The Second Circuit has upheld waiver provisions in circumstances where, as here, a defendant's sentence was collaterally attacked based on a residual clause that was found to be unconstitutionally vague. See, e.g., Sanford v. United States, 841 F.3d 578, 580-81 (2d Cir. 2016) (collecting cases).

Indeed, Honorable Joan M. Azrack of this District has recently found a nearly identical collateral challenge waiver to be enforceable. See Rogers, 2024 WL 866172, at *3-4. This Court

adopts Judge Azrack's well-reasoned rationale for her finding of enforceability, which the Court reiterates for the reader's convenience:

> "A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is [presumptively] enforceable." Sanford v. United States, 841 F.3d 578, 580 (2d Cir. 2016) (citing United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir. 2000) (addressing waiver of appellate rights); Tellado v. United States, 745 F.3d 48 (2d Cir. 2014) (addressing collateral attack waiver)). "Such waivers must be enforced because, if they are not, 'the covenant . . . becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants.'" Cook v. United States, 84 F.4th 118, 122 (2d Cir. 2022) (quoting United States v. Yemitan, 70 F.3d 746, 748 (2d Cir. 1995)). Although "plea agreements are to be applied 'narrowly' and construed 'strictly against the government,'" United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001) (quoting United States v. Tang, 214 F.3d 365, 368 (2d Cir. 2000)), exceptions to the presumption of the enforceability of a waiver "occupy a very circumscribed area of [the Second Circuit's] jurisprudence." United States v. Borden, 16 F.4th 351, 354-55 (2d Cir. 2021) (internal quotation marks omitted). The Second Circuit has recognized only five circumstances where it will not enforce a waiver: "(1) where the waiver was not made knowingly, voluntarily, and competently; (2) where the sentence was based on constitutionally impermissible factors, such as ethnic, racial[,] or other prohibited biases; (3) where the government breached the agreement containing the waiver; . . . (4) where the district court failed to enunciate any rationale for the defendant's sentence," United States v. Burden, 860 F.3d 45, 51 (2d Cir. 2017) (internal quotation marks omitted); and (5) where the waiver "was

Page 10 of 17

unsupported by consideration," United States v. Lutchman, 910 F.3d 33, 38 (2d Cir. 2018).

[T]he Second Circuit has . . . made clear that such waivers are generally enforceable in the face of "evolving judicial precedent." United States v. Morgan, 406 F.3d 135, 137 n.3 (2d Cir. 2005); see also Cook, 84 F.4th at 124. As the Circuit noted nearly two decades ago, and recently reaffirmed in Cook, "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements." Id. at 137; see also Cook, 84 F.4th at 124. "This principle follows from the fact that plea agreements, like all contracts, allocate risk between the parties—and [courts] are not free to disturb the bargain the parties strike." Cook, 84 F.4th at 124.

The Second Circuit's decision in Sanford— in which the Circuit held that a defendant's waiver of his right to collaterally attack his sentence remained enforceable even where his sentence was based on a Guidelines provision later held to be unconstitutional—reinforces this point about the continuing viability of plea agreements. See 841 F.3d at 580. As in Sanford, this case involves a change in law that, in Defendant's view, governs his sentence. Even assuming that Defendant's sentence was affected by [Davis][3] . . . , the Second Circuit has held that "a defendant's inability to foresee a change in the law does not supply a basis for failing to enforce an appeal waiver. On the contrary, the possibility of a favorable change in the law after a plea is simply one of the risks

---

[3] In Rogers, the defendant sought to challenge his sentence based upon the Supreme Court's recent decision in Lora v. United States, 599 U.S. 453 (2023). See 2024 WL 866172, at *1. In Lora, "the Court held that a 'sentence for a § 924(j) conviction . . . can run either concurrently with or consecutively to another sentence.'" Rogers, 2024 WL 866172, at *4 (quoting Lora, 599 U.S. at 455). However, since Rogers was not charged or convicted under § 924(j), the Lora holding had no bearing on his claim or sentence and "d[id] not provide Defendant with a basis for re-sentencing." Id.

Page 11 of 17

> that accompanies pleas and plea agreements." Sanford, 841 F.3d at 580 (cleaned up). "The enforceability of a collateral-attack waiver turns on whether the petitioner's plea was knowing and voluntary, not the nature of any subsequent legal developments." Cook, 84 F.4th at 124.
> Accordingly, "[a]t bottom, a waiver of the right to bring a postconviction challenge is presumptively enforceable, even after the legal landscape shifts." Id. at 125. A defendant like [Edwin Henriquez], "who wishes to maintain his right to collaterally attack his conviction in the event of unforeseen legal developments may, of course, attempt to negotiate more favorable waiver terms with the government before pleading guilty." Id. But where—as here—"the waiver itself is clear, unambiguous, knowingly and voluntarily entered, and supported by consideration— [i.e.,] the [G]overnment's agreement not to pursue charges or arguments that could have resulted in a much higher sentence—the terms of the plea agreements must be enforced." Id.

Id. at *3-4. Thus, if the defendant's submission were to have been construed as a Section 2255 habeas petition, Judge Azrack would have dismissed it because the defendant's collateral challenge waiver was enforceable. See id. at *4. For the reasons articulated by Judge Azrack in Rogers, the same holds true here. Defendant's Collateral Challenge Waiver: is clear and unambiguous; was knowingly and voluntarily entered into; and, was supported by consideration, i.e., the Government's agreement not to pursue charges or arguments that could have resulted in a much higher sentence for Defendant. Therefore, the Collateral Challenge Waiver provision of the subject Plea Agreement must be enforced.

See Roselien v. United States, No. 23-0630, 2024 WL 4341361 (2d Cir. Sept. 30, 2024) (affirming district court's enforcement of collateral challenge waiver where defendant "knowingly and voluntarily waived his right to collaterally attack his conviction, the plea agreement was supported by valid consideration, and enforcing the collateral-attack waiver would not be manifestly unjust where the record establishe[d] a different and valid predicate for [defendant's] § 924(c) conviction") (summary order). As a result, Defendant is barred from challenging his sentence even by way of the All Writs Act.

C.   There is No Merit to Defendant's *Davis* Argument

Even if Defendant was not barred from challenging his sentence, his Davis-based argument is without merit. In Osborne v. United, States, in denying the defendant's Section 2255 habeas petition, this Court rejected a similarly premised Davis argument as raised by Defendant here, i.e., asking the Court to focus only upon a conspiracy to commit murder, which is not a crime of violence, and ignore other valid predicate offenses, which are crimes of violence that support the imposed sentence. See No. 14-CR-0264, 2022 WL 1693668 (E.D.N.Y. May 26, 2022). The Court initially explained:

> [I]n Davis, the Supreme Court invalidated the Residual Clause of Section 924(c) as unconstitutionally vague. See Davis, 139 S. Ct. at 2325-27. Thus, a conviction under Section 924(c) survives only if a predicate

> offense is a "crime of violence" under the Elements Clause. See, e.g., Rosario Figueroa v. United States, No. 16-CV-4469, 2020 WL 2192536, at *2 (S.D.N.Y. May 6, 2020); Vilar v. United States, No. 16-CV-5283, 2020 WL 85505, at *1 (S.D.N.Y. Jan. 3, 2020).

Id. at *5. It continued:

> Petitioner claims that conspiracy to commit murder cannot serve as the predicate crime of violence for his Section 924(c) convictions . . . because, pursuant to Davis, conspiracy to commit murder no longer qualifies as a "crime of violence". This is so. See United States v. Heyward, 3 F.4th 75, 78 (2d Cir. 2021) (holding conspiracy to commit murder does not qualify as a predicate crime supporting a Section 924(c) conviction); see also United States v. Erbo, No. 97-CR-1105, 2020 WL 6802946, *2 (S.D.N.Y. Nov. 19, 2020) ("Following Davis, a mere conspiracy to commit a crime of violence will ordinarily fail to qualify under Section 924(c)'s force[, i.e., elements,] clause." (citing United States v. Barrett, 937 F.3d 126, 127 (2d Cir. 2019), and Ianelli v. United States, 420 U.S. 770, 777 (1975))). However, another offense may serve as a predicate if there is "legally sufficient proof that the crime was, in fact, committed." Johnson v. United States, 779 F.3d 125, 129 (2d Cir. 2015) ("Every circuit court to have considered the issue has concluded that § 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." (collecting cases)); United States v. Rivera, 679 F. App'x 51, 55 (2d Cir. 2017) (summary order) (denying a petitioner's Johnson claim where the defendant's plea allocution provided sufficient proof for a predicate offense that was later dismissed at sentencing).

Id. at *7 (emphasis added). In Osborne, since there was legally sufficient proof that other crimes were committed, e.g., attempted murder, assault with a dangerous weapon, and witness retaliation, which were "crimes of violence" that also served as predicates to the challenged counts, this Court found those challenged counts were "not implicated by Davis because they were predicted upon substantive crimes of violence for which [Osborne] was convicted, which convictions [were] more than legally sufficient proof that the crimes were, in fact, committed." Id. at *8.

The same rationale applies here; given Defendant's plea allocution, there was sufficient proof that he committed the predicate offense of murdering Oliva Mendoza in violation of N.Y. Penal Law § 125.25(1), which is a "crime of violence" and has been found to withstand Davis-based challenges. See, e.g., United States v. Davis, 74 F.4th 50, 56 (2d Cir. 2023) ("Therefore, [defendant]'s conviction for VICAR murder, predicated on second-degree intentional murder under N.Y. Penal Law § 125.25(1), categorically qualifies as a crime of violence under § 924(c)."); United States v. Ocasio, No. 95-CR-0942, 2024 WL 2925191, at *11 (S.D.N.Y. June 10, 2024) (in rejecting Davis-based argument, finding "intentional murder in violation of Section 125.25(1) undoubtedly qualifies as a 'crime of violence' under the elements clause").

Indeed, the Government astutely argued this in opposition:

> [P]rior to [Defendant] pleading guilty, the Court had the [G]overnment explain the elements of Count 10 in detail, including the elements of each of the counts that are incorporated into Count 10, i.e., Count 7 (Discharging a Firearm During a Crime of Violence), and the two predicate crimes of violence, Count 5 (Murder in Aid of Racketeering) and Count 4 (Conspiracy to Commit Murder in Aid of Racketeering). In addressing Counts 4 and 5, the [G]overnment set out the elements of § 1959(a)(1), which incorporates the elements of second degree murder under the New York Penal Law, and the fact that the MS-13 was an enterprise as defined in § 1959(b)(2). Thereafter, [Defendant] factually allocuted to all of those elements and pleaded guilty. Indeed, he stated in relevant part, "The night of September 19, 2004, in Long Island, I shot a firearm against Olivia Mendoza with intention of killing her and I caused her death when I shot her." Because [Defendnat]'s predicate "crime of violence," murder, clearly satisfies the Elements Clause of Section 924(c)(3)(A), his claim fails . . . .

(Opp'n at 12 (citing Plea Hr'g Tr. 11-13, 16-17).) Based upon the record before it, the Court agrees. Hence, even if there were grounds for the Court to invoke its jurisdiction pursuant to the All Writs Act, which there are not, because Defendant's Davis-based arguments are without merit, his Motion would be denied.

\*\*\*

To the extent not explicitly addressed, the Court has considered the remainder of Defendant's arguments and finds them

to be without merit. Thus, any additional requested relief is DENIED.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion (ECF No. 503) is **DENIED** in its entirety;

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the Defendant at his current address of record (see supra at 1 ("APPEARANCES"), and note 1), including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: October 10, 2024
       Central Islip, New York